245 P.2d 617]

[Civ. No. 15163.   First Dist., Div. One.   June 25, 1952.]

G. T. BONDE et al., Respondents, v. WILBUR A. BISHOP et al., Appellants.

( 1 )

Aaronson & Cohn, Michael Aaronson and Melvin E. Cohn for Appellants.

Marvin J. Colangelo for Respondents.

BRAY, J.—Action for declaratory relief and to declare defendants' tree which overhangs plaintiffs' premises a nuisance. Defendants appeal from a judgment ordering defendants to abate the nuisance and awarding $200 damages.

### QUESTIONS PRESENTED

1. The law concerning encroaching trees.
2. Sufficiency of the evidence to prove (a) a nuisance and (b) damages.

### 2. EVIDENCE

(a) Nuisance

There is substantial evidence to support the court's finding that the branches of the tree overhanging plaintiffs' property constitute a nuisance and an ever present danger to plaintiffs' premises. On defendants' property, approximately 20 feet from the line between the properties of the parties, there is a white oak tree 50 or 60 feet tall, the trunk

of which is approximately 4 feet in circumference. Three of its main limbs extend approximately 25 feet over and about 40 feet above plaintiffs' property, one over the driveway area, one over the den area and one over the patio area. In the main part of the tree about 14 feet above the base is a large hole. About 5 o'clock on the morning of September 2, 1950, a large limb broke loose from the tree, smashed through plaintiffs' garage and smashed a section of the fence. Defendant Bishop when asked what he was going to do about the damage stated that it was not his responsibility. This damage was paid for by insurance held by plaintiffs. There is a continual dropping of smaller branches on the roof, driveway and patio. One small branch almost hit plaintiff while he was standing in the middle of his driveway. It is almost a daily chore to clean the debris from the tree. The noise of the dropping of the smaller branches on the roof constantly reminds plaintiffs of the danger. During the rainy season it is a two-hour job every Sunday to clear the gutters and the drain spouts of the debris from the tree. Plaintiffs are afraid of the overhanging limbs and because of them are afraid to leave their baby out in the patio. The debris requires plaintiffs to sweep the patio and driveway daily and rake the lawn before mowing it. Finally, plaintiff put screens on the gutters so he would not be required to clean them. When defendant Bishop was told by Mrs. Bonde that plaintiffs desired the tree cut back to their line, he not only refused but warned her that if plaintiffs had it cut back and damaged the tree in any way, defendants would sue plaintiffs. After the limb fell defendants had the foliage thinned out, removing two loads of brush and a considerable quantity of wood.

Defendants rely mainly on the testimony of their only witness, a tree expert, who gave it as his opinion that for safety it is not necessary to cut down the tree. (The court did not order the *tree* cut down, merely ordered the nuisance to be abated. This requires only the removal of the overhanging limbs.) The parties and the court concluded from the witness' testimony that he also meant that the overhanging limbs were safe, although he did not say so. He did testify that he had thinned the tree to lighten it for safety, and that the tree "would continue to stand until such time as the tree would leaf out and again get heavy." On cross-examination when asked if he was willing to state that the overhanging branches would not fall at any time, he answered in the negative, say-

ing that a tree is not static and conditions do change and are constantly changing. He also testified that the hole probably extends down the tree. He assumed that there was decay there which might lessen the strength of the tree.

The above testimony is amply sufficient to demonstrate that the overhanging branches are a nuisance. Apparently this is one of those rows between neighbors in which the defendants are standing on what they erroneously believe to be their strict legal rights to the exclusion of any consideration of the fair, decent, neighborly and legal thing to do.

The fact that an overhanging branch did fall, the age of the oak tree, the evidence of some decay, indicates that there is danger of the overhanging limbs falling. But assuming as claimed by defendants that the tree is safe in that respect, there is still ample evidence that its limbs constitute a nuisance as to plaintiffs. The constant dropping of small branches on the roof and in the yard, the inability to leave their baby in the patio because of that fact, the constant work required to keep their premises clean, alone establish the nuisance.

*In its findings* the court found that the overhanging limbs were of no value or use to plaintiffs. Defendants contend that there is no evidence to support this. There is no evidence that the overhanging limbs were of value or use to plaintiffs. The finding is supported.

(b) Damages.

The only actual pecuniary expense incurred by plaintiffs (other than the repairing of the damage, for the cost of which plaintiffs were reimbursed by the insurance company) was the screening of the gutters which was done by plaintiff himself (no cost of this is given; apparently he used old screen), and the attorney's fees in connection with this suit. ▮ "In the absence of statute, attorney's fees are not a proper element of damages in actions for injuries suffered as a result of a nuisance." (66 C.J.S. p. 975, § 170.) There is no such statute in California.

The only allegations in the complaint concerning damages are that "said tree has caused considerable damage to the land and property of plaintiffs"; "That by reason of the aforesaid wrongful acts and because of the ever-present danger of falling branches, plaintiffs have and are suffering irreparable damage, and the portions of the tree overhanging plaintiffs' property . . . are a permanent and irreparable

damage to plaintiffs." In the prayer plaintiffs ask for $300 "compensatory damages." The court found the allegations in the charging portion of the complaint true, and concluded that plaintiffs were entitled to damages in the sum of $200. Plaintiff Bonde testified that it was almost a daily chore to clean his lawn and patio because of the dropping leaves. Before he screened the gutters it was a two-hour job every Sunday during the rainy season to clean the leaves out of his gutters. Defendants demurred to the complaint on the special grounds that it was unintelligible and uncertain in not stating how plaintiffs had been damaged in the sum of $300. The demurrer was overruled. No objection was offered to the plaintiff's testimony as to his being required to clean the lawn, patio and gutters. However, this testimony was, of course, admissible to prove the nuisance. The court made no finding as to what the award of $200 was based on other than its finding that the beforementioned allegations were true. There is nothing in those allegations to support an award of special damages. ██ An allowance to plaintiffs for their time in cleaning up the debris constitutes special rather than general damage. Special damages must be specially pleaded. (*Shook* v. *Pearson,* 99 Cal.App.2d 348 [221 P.2d 757].) *Gallagher* v. *California Pac. T. & T. Co.,* 13 Cal.App.2d 482 [57 P.2d 195], is not in point. It holds an insufficient allegation of damages is good where there is no special demurrer. Here there was such special demurrer. Nor is *Warfield* v. *Basso,* 62 Cal.App. 47 [216 P. 48], where on appeal from an order sustaining a demurrer in an action on a contract, it was held that as against a general demurrer it is not a fatal error that the pleader has mistaken the rule by which damages should be determined. While the court under the allegations of the complaint and its equity powers could have awarded plaintiffs general damages if there were evidence to support such an award (see *Brickner Woolen Mills Co.* v. *Henry,* 73 Wis. 229 [40 N.W. 809]), the court did not do so. In view of the lack of averment of special damages in the complaint, lack of evidence and of findings of special damages, the allowance of $200 was improper.

### 1. ENCROACHING TREES

██ The weight of authority is that *to the extent* that limbs or roots extend upon an adjoining landowner's property the latter *may remove* them, but only to the boundary line. (1 Am. Jur. p. 537.) California follows this rule. (*Grandona* v.

*Lovdal,* 78 Cal. 611 [21 P. 366, 12 Am.St.Rep. 121] ; *Stevens* v. *Moon,* 54 Cal.App. 737 [202 P. 961].)

■ ■ As to *damages,* according to 1 American Jurisprudence page 538, the general rule is as follows : ''The owner of a tree the branches of which overhang the premises of an adjoining landowner is liable for damages caused by the overhanging branches. And this is so without regard to the extent of the damage resulting therefrom, the insignificance of the injury going to the extent of the recovery, and not to the right of action. . . . But it has been held that no landowner has a cause of action from the mere fact that the branches of an innoxious tree, belonging to an adjoining landowner, overhang his premises, his right to cut off the overhanging branches being considered a sufficient remedy.'' The last statement apparently is the California rule, for no damages were given in the Grandona case. Other cases in California which have given damages have more than mere encroachment; there was damage to crops, etc.

■ While it is the absolute right of a landowner to remove those portions of trees which encroach on his land whether they cause damage or not, it is rather anomalous that to obtain court help in the matter he must first prove that the encroachment constitutes a nuisance. In other words, the landowner, merely because he does not desire a neighbor's tree to overhang his premises, can, in a sense, take the law in his own hands and cut off the encroachment, but to act in what is probably a more orderly manner and apply to the court for an injunction restraining the tree owner from allowing the tree to so encroach, he apparently has to prove that the encroachment constitutes a nuisance. At least, the authorities on this question are not as clear cut as on the other. 1 American Jurisprudence page 538 points out that a few decisions have recognized the right of a landowner to compel the owner of the encroaching tree to remove the encroachment merely because the landowner wants it removed, but that most of the decisions hold that the landowner's relief in this respect can be obtained only under the nuisance statutes and hence a nuisance must be proved. This probably is the rule in California. Most of the cases dealing with the subject have been nuisance cases. Thus in *Stevens* v. *Moon, supra,* 54 Cal.App. 737, where damage and a nuisance were shown by the evidence, the trial court followed the defendant's contention that an action would not lie for the reason that plaintiff had the right personally to cut off the offending roots. The reviewing court,

however, pointed out that the evidence showed that the roots were noxious because they ruined the plaintiff's soil and under the authority of section 3479, Civil Code, defining a nuisance, and section 731, Code of Civil Procedure, permitting a party to bring an action to abate a private nuisance, ordered the trial court to grant an injunction and damages. *Grandona* v. *Lovdal*, 70 Cal. 161 [11 P. 623], held that a complaint alleging that an encroaching tree constituted a nuisance and was causing damage, stated a cause of action in a private action for the abatement of the encroachment, saying (p. 162) : " 'Trees whose branches extend over the land of another are not nuisances, except to the extent to which the branches overhang the adjoining land. To that extent they *are* nuisances, and the person over whose land they extend may cut them off or have his action for damages, and an abatement of the nuisance against the owner or occupant of the land on which they grow, but he may not cut down the *tree,* neither can he cut the branches thereof beyond the extent to which they overhang his soil.' (Wood on Nuisances, sec. 112, citing *Commonwealth* v. *Blaisdell,* 107 Mass. 234; *Commonwealth* v. *McDonald,* 16 Serg. & R. 390.) So, it would seem, he may have abated the roots projecting into his soil, *at least if he has suffered actual damage thereby.*" (Last emphasis added.) (See also *Fick* v. *Nilson,* 98 Cal.App.2d 683 [220 P.2d 752].) *Parsons* v. *Luhr,* 205 Cal. 193 [207 P. 443], holds that if overhanging limbs are a nuisance (such as a menace) an action for abatement will lie. The language of that case is appropriate here (although the actual damage there was greater than here) : "The finding that the tree in question was a constant menace to the property of the defendants is sustained by the testimony to the effect that in the past large branches had fallen on the roof and porch of defendants' house, one of such branches tearing a hole in the roof; that the leaves filled the gutters, and littered the porch and lawn. Clearly, under the testimony appearing in the record here and the findings of the trial court, this tree was 'an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property.' (Sec. 3479, Civ. Code.)" (P. 197.)

In *Grandona* v. *Lovdal, supra,* 78 Cal. 611, principally relied on by defendants, an injunction was denied on the ground that the evidence failed to show that plaintiff's land was injuriously affected by the overhanging trees. His land was used for agricultural purposes only and plaintiff complained that the overhanging limbs *might* interfere with his growing fruit

trees. The court, after pointing out that plaintiff had never planted any fruit trees anywhere near the line of trees in controversy or even proposed or intended to do so, said: ". . . we are unable to see how it can be said that land is injuriously affected, or that its owner's personal enjoyment is lessened, because he cannot use it for a purpose which he has never attempted or wished to use it for." (P. 617.) It further told the plaintiff that if he did not like the overhangings he could cut them off. In *Rothaermel* v. *Amerige*, 55 Cal.App. 273 [203 P. 833], where defendant built his foundation one and a half inches on plaintiff's property, defendant relinquished all claim to the one and a half inches of land. The court denied an injunction because of the impossibility of removing the encroachment and the waiver of any claim of right by defendant based on the rule of *de minimus*. Obviously the case is not in point.

The portion of the judgment awarding plaintiffs damages in the sum of $200 is reversed. In all other respects the judgment is affirmed. Plaintiffs are awarded costs.

Peters, P. J., and Wood (Fred B.), J., concurred.